UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JOSE PENA,                              :

                    Petitioner,         :       04 Civ. 9499 (DAB)(HBP)

     -against-                          :       REPORT AND
                                                RECOMMENDATION
STATE OF NEW YORK,                      :

                    Respondent.         :

----------------------------------X


          PITMAN, United Stated Magistrate Judge:


          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.   Introduction


          Jose Pena, by his pro se petition, seeks a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, vacating a judgment

of conviction entered on November 21, 2002, after a jury trial in

the Supreme Court of the State of New York, New York County

(Bradley, J.), for one count of criminal possession of a con-

trolled substance in the third degree and one count of criminal

possession of a controlled substance in the fourth degree, in

violation of New York Penal Law Sections 220.16(1) and 220.09(1),

respectively.  By that judgment, petitioner was sentenced as a

second felony offender to concurrent indeterminate terms of

imprisonment of four and a half to nine years and three to six

years. Petitioner is currently on parole as a result of that judgment.

For the reasons set forth below, I recommend that the petition be denied in all respects.

II. Background

A. Facts Underlying
   Petitioner's Conviction

The evidence offered at trial established the following facts.

On May 8, 2002, at approximately 10:15 pm, Sergeant John Vanorden and Officers John Holland and Kahill of the New York City Police Department were in a parked, undercover police van on Eighth Avenue near 40th Street in Manhattan, a well-lit area, when they observed petitioner engage in an apparent drug transaction involving two other individuals (Trial Transcript, annexed to Volume 2 of State Court Transcript, Docket Item 18 ("Tr."), at 11-15, 79-84). Vanorden observed petitioner, who was wearing a red jacket, standing on the corner near a suspected accomplice, as the two engaged in what Vanorden believed was suspicious behavior, namely "giving head bobs" and attempting to speak with pedestrians in an area that Vanorden testified was known for having a high rate of drug sales (Tr. at 11-14). After two or three minutes, Vanorden observed a suspected buyer ap-

proach the two men and hand petitioner's accomplice an unknown amount of currency (Tr. at 15-16). Both Vanorden and Holland saw petitioner take an object from his pocket and hand it to the suspected buyer, who then walked away (Tr. at 15-16, 79-84).

After Vanorden and Holland attempted, unsuccessfully, to apprehend the suspected buyer, they caught up with petitioner, who they recognized by his red jacket, on 36th Street (Tr. at 86-87). Officer Holland yelled "police," and petitioner stopped, raised his arms and placed his hands against a wall (Tr. at 89). Officer Holland searched petitioner and recovered a cigarette box containing seven small blue bags containing rock-cocaine from petitioner's jacket pocket, a bag containing one-eighth of an ounce of powder-cocaine from another jacket pocket and a bag containing several empty blue bags, apparently packaging for street drugs, from petitioner's pants' pocket (Tr. at 89-90, 101, 143).

Petitioner was subsequently charged with violating both New York Penal Law Section 220.16(1), which makes it a crime to "knowingly and unlawfully possess a narcotic drug with intent to sell it," and New York Penal Law Section 220.09(1), which makes it a crime to "knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing a narcotic drug . . . [with] an aggregate weight of one-eighth ounce or more." After a jury found petitioner guilty on both

counts, the Trial Court sentenced petitioner to concurrent
indeterminate prison terms of from four and a half to nine years
and three to six years, respectively (Tr. at 228; Sentencing
Transcript, annexed to Volume 2 of State Court Transcript, at 8).

B.   Pre-Trial
     Proceeding

Prior to trial, petitioner moved to suppress the
physical evidence seized from him at the time of his arrest on
the ground that the officers' conducted that search without
probable cause.  The Trial Court heard argument and conducted a
hearing with respect to that motion on October 31, 2002, at which
time Vanorden testified to the circumstances and details concern-
ing Officer Holland's search of petitioner (Hearing Transcript,
annexed to Volume 1 of State Court Transcript, ("Hr."), at 6-56).

In support of his argument that the officers' lacked
probable cause, petitioner argued that the Trial Court should not
credit Vanorden's testimony regarding his observations because
the sergeant could not possibly have observed the alleged narcot-
ics transaction under the circumstances that he had described --
across seven lanes of traffic with poor lighting and without
visual aids such as binoculars (Hr. at 57-58).

The Trial Court denied petitioner's motion to suppress,
finding that Vandoren's testimony was credible and his observa-
tions, which described an obvious narcotics transaction in a

4

location known for narcotics sales, provided probable cause for the arrest and search of petitioner (Hr. at 59-61).

      C.  Petitioner's
          Direct Appeal

      Assisted by counsel, petitioner appealed his conviction to the Appellate Division of the Supreme Court, First Department. Petitioner's main brief asserted only one claim, namely that the evidence was insufficient to prove beyond a reasonable doubt that he intended to sell the cocaine in his possession, and, there-fore, the crime of criminal possession of a controlled substance in the third degree was not proven (Petitioner's Brief to the Appellate Division ("App. Brief"), annexed as Exhibit A to Declaration of Lisa Fleischmann in Opposition to Petition for a Writ of Habeas Corpus, dated Dec. 12, 2005, ("Fleischmann Decl."), Docket Item 17).  Petitioner subsequently filed a pro se supplemental appellate brief in which he challenged both of his convictions on the grounds that, inter alia, the officers had testified falsely concerning their observations of petitioner and that their search of petitioner was illegal (Supplemental Brief and Complaint on Appeal ("Supp. App. Brief"), annexed as Exhibit C to Fleischmann Decl.).

      The Appellate Division unanimously affirmed peti-tioner's conviction on December 16, 2003, stating,

> [t]he verdict was based on legally sufficient
> evidence and was not against the weight of the evi-
> dence.  There is no basis for disturbing the jury's
> determinations concerning credibility.  There was ample
> evidence of possession of drugs with intent to sell,
> including the officers' observation of defendant ex-
> changing an object for money, the drugs recovered from
> defendant's person, and the manner in which the drugs
> were packaged (see People v Ranson, 251 AD2d 263, lv
> denied 92 NY2d 985).  We have considered and rejected
> defendant's remaining arguments, including those con-
> tained in his pro se supplemental brief.

People v. Pena, 2 A.D.3d 249, 249, 768 N.Y.S.2d 324, 324 (1st

Dep't 2003).

Petitioner sought leave to appeal to the New York Court

of Appeals raising all the issues he had presented to the Appel-

late Division, including those raised in his pro se supplemental

brief (Letter of Robert S. Dean, Esq. to the New York Court of

Appeals, dated January 6, 2004, annexed as Exhibit E to

Fleischmann Decl.).  The Court of Appeals denied petitioner leave

to appeal on March 5, 2004.  People v. Pena, 2 N.Y.3d 744, 810

N.E.2d 922, 778 N.Y.S.2d 469 (2004).  Petitioner filed his

initial pro se petition for a writ of habeas corpus on December

3, 2004 (Docket Item 1).  Petitioner also submitted amended

petitions on September 26, 2005 (Docket Item 11) and November 15,

2005 (Docket Item 19).

D.  The Habeas
    Petition

The initial petition attached the appellate brief submitted by petitioner's attorney and petitioner's pro se supplemental brief, but failed to specify the grounds on which petitioner sought relief as required by Rule 2(c) of the Section 2254 Rules.  On December 3, 2004 the Honorable Michael B. Mukasey, then Chief Judge of this District, granted petitioner leave to file an amended petition setting forth his claims and the relevant facts and informed petitioner that if he failed, within sixty days, to either file the amended petition or notify the Court that he intended to withdraw his petition, the petition would be dismissed (December 3, 2004 Order, Docket Item 2). Petitioner failed to comply with the December 3, 2004 Order, and on March 15, 2005 Judge Mukasey ordered the petition dismissed (Docket Item 5).  Petitioner filed a notice of appeal from the March 15, 2005 Order, and Judge Mukasey declined to issue a certificate of appealability on the ground that petitioner failed to make a substantial showing of the denial of a constitutional right (Docket Item 7).

Petitioner subsequently submitted an affirmation explaining that he never received the Court's December 3, 2004 Order because it was not delivered to him while he was confined in the Special Housing Unit at Greene Haven Correctional Facility

(Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, Docket Item 16 ("Resp. Mem."), at 6). Judge Mukasey issued an Order on August 29, 2005, construing petitioner's affirmation as a motion for reconsideration, granting the motion and instructing petitioner to file an amended petition within sixty days (August 29, 2005 Order, Docket Item 10). Petitioner filed his first amended petition on September 26, 2005 (Amended Petition, Docket Item 11 ("Am. Pet.")), and the matter was reassigned to your Honor (Docket Item 12).

The amended petition asserts two grounds for relief. The first ground states,

> [t]he evidence was insufficient to prove that appellant intended to sell the cocaine found in his possession because transaction observed by police officers was too ambiguous to support a conclusion that of a drug sale [sic]. [Neither a] buyer nor a "Money Man" was apprehended. No money was found on appellant. Amount of cocaine found in pockets was consistent/personal use. U.S. Const. Amend. XIV N.Y. Const. Art. 1 & 6

(Am. Pet. at 5)(original in all capitals). Second, petitioner asserts that he is entitled to habeas relief because he was subjected to an "ILLEGAL SEARCH" (Am. Pet. at 6). Petitioner failed to attach to his amended petition copies of his Appellate Division briefs.

On November 15, 2005, petitioner submitted a second amended petition asserting the same grounds for relief as his first amended petition and attaching both of his appellate briefs (Docket Item 19). According to the Court's Docket Sheet, the

Clerk only served the first amended petition on respondent (Docket Item 13, Unnumbered Docket Entries dated October 25, 2005). Respondent filed its opposition on December 12, 2005 addressing petitioner's amended petition (Resp. Mem. & Fleischmann Decl.). Respondent's declaration in opposition attached both the appellate brief filed by petitioner's attorney and petitioner's <u>pro</u> <u>se</u> supplemental brief, (Exhibits A & C); respondent's memorandum of law in opposition to the petition addresses the issues raised in both briefs (Resp. Mem. at 10, 13). Since respondent was apparently aware of the substance of these briefs when it prepared its opposition and because it will not prejudice respondent, I shall consider the contentions asserted in petitioner's appellate briefs that might provide additional support for the two claims petitioner raises in his habeas petition.

Petitioner did not submit a reply to respondent's opposition.

III.  <u>Analysis</u>

    A.  Sufficiency of
        <u>the Evidence Claim</u>

       1.  <u>Standard of Review</u>

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly estab-lished Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unrea-sonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained the alternative standards set of in the former paragraph as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  <u>See also</u> <u>Early v. Packer</u>, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (<u>per curiam</u>). . . .
>
> Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:

> "[A] federal habeas court may not issue the writ
> simply because that court concludes in its inde-
> pendent judgment that the state-court decision
> applied [a Supreme Court case] incorrectly.  See
> <u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S.Ct.
> 1843, 152 L.Ed.2d 914 (2002); <u>Williams</u>, <u>supra</u>, at
> 411, 120 S.Ct. 1495.  Rather, it is the habeas
> applicant's burden to show that the state court
> applied [that case] to the facts of his case in an
> objectively unreasonable manner."

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (<u>per</u> <u>curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Brown v. Payton</u>, 544 U.S. 133, 139-40 (2005); <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72 (2003); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable applica-
tion" set forth above, a state court may unreasonably apply
Supreme Court precedent "if the state court unreasonably extends
a legal rule established by the Supreme Court or if it unreason-
ably fails to extend a legal rule to a context in which the rule
reasonably should apply." <u>Serrano v. Fischer</u>, 412 F.3d 292, 296-
97 (2d Cir. 2005), <u>cert</u>. <u>denied</u>, 126 S.Ct. 1357 (2006).  "Unrea-
sonableness is determined by an 'objective' standard." <u>Gersten
v. Senkowski</u>, 426 F.3d 588, 607 (2d Cir. 2005), <u>cert</u>. <u>denied</u>, 126
S.Ct. 2882 (2006), <u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 409
(2000).  In order for a state court's application of Supreme
Court precedent to be unreasonable, "[s]ome increment of incor-

rectness beyond error" is required. <u>Henry v. Poole</u>, 409 F.3d 48, 68 (2d Cir. 2005), <u>cert</u>. <u>denied</u>, 126 S.Ct. 1622 (2006) (internal quotation marks omitted); <u>accord</u> <u>Brown v. Artuz</u>, <u>supra</u>, 283 F.3d at 500-01; <u>Aparicio v. Artuz</u>, <u>supra</u>, 269 F.3d at 94. However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000), <u>quoting</u> <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 889 (3d Cir. 1999)(<u>en</u> <u>banc</u>); <u>accord</u> <u>Gersten v. Senkowski</u>, <u>supra</u>, 426 F.3d at 607.

The nature of the rule in issue also impacts the assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time." [<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)]. "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." <u>Id</u>.

<u>Serrano v. Fischer</u>, <u>supra</u>, 412 F.3d at 297; <u>see</u> <u>also</u> <u>Hawkins v. Costello</u>, <u>supra</u>, 460 F.3d at 243.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams v. Taylor</u>, <u>supra</u>, 529 U.S. at 412. "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate

such a standard in a particular context." <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." <u>Yung v. Walker</u>, 341 F.3d 104, 110 (2d Cir. 2003); <u>accord</u> <u>DelValle v. Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002).

To be entitled to the deferential standard of review under subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 230; <u>see</u> <u>also</u> <u>Ryan v. Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002)("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 145. "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." <u>Mateo v. Fishkill Corr. Facility</u>, CV-04-3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), <u>quoting</u>

Jimenez v. Walker, supra, 458 F.3d at 138.  To make this classi-
fication, habeas courts in this circuit examine "(1) the face of
the state-court opinion, (2) whether the state court was aware of
a procedural bar, and (3) the practice of state courts in similar
circumstances."  Jimenez v. Walker, supra, 458 F.3d at 145 n.16.

Here, upon examining these three factors, I conclude
that the Appellate Division, which found that "[t]he verdict was
based on legally sufficient evidence and was not against the
weight of the evidence," adjudicated the merits of petitioner's
insufficiency claim.  People v. Pena, supra, 2 A.D.3d at 249, 768
N.Y.S.2d at 324.  This conclusion is not altered by the fact that
the Appellate Division did not explicitly refer to the Fourteenth
Amendment, or relevant federal case law.  See Sellan v. Kuhlman,
supra, 261 F.3d at 312 (noting that a state court decision may be
deemed on the merits "even if the state court does not explicitly
refer to . . . relevant federal case law"); Cheng Kang Shi v.
Connolly, 06 CV 2093 (NG)(RLM), 2007 WL 4380276 at *6 (E.D.N.Y.
Dec. 13, 2007)("AEDPA's deferential standard of review applies
even if the state court did not explicitly refer to either the
federal claim or to relevant federal case law.")(internal quota-
tion marks omitted).

Because the Appellate Division adjudicated petitioner's
insufficiency claim on the merits, the Appellate Division's

decision on this claim is entitled to the deferential standard of review set forth in 28 U.S.C. § 2254(d).

 2. Petitioner's
 Conviction Was Supported by
 Legally Sufficient Evidence

Petitioner claims that the evidence adduced at trial was legally insufficient to prove that he intended to sell the cocaine found in his possession (Am. Pet. at 5). Respondent argues that petitioner's claim fails because the Appellate Division's decision concerning that claim was not contrary to, or an unreasonable application of, clearly established federal law (Resp. Mem. at 8-12).

In reviewing a claim that evidence was legally insufficient,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)(citations and original emphasis omitted); Policano v. Herbert, 507 F.3d 111, 116 (2d Cir. 2007)("[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence.")(internal quotation

marks omitted); <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 811 (2d Cir. 2000) (same); <u>Davis v. Greene</u>, 04 Civ. 6132 (SAS), 2008 WL 216912 at *6 (S.D.N.Y. Jan. 22, 2008)(same).

Under this "rigorous standard," <u>Wheel v. Robinson</u>, 34 F.3d 60, 66 (2d Cir. 1994), "all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor." <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996), <u>citing</u> <u>United States v. Rosa</u>, 11 F.3d 315, 337 (2d Cir. 1993). Further, "[a]ssessments of the weight of the evidence or the credibility of the witnesses are for the jury and are not grounds for reversal"; habeas courts must defer to the jury's assessment of both these issues. <u>Maldonado v. Scully</u>, <u>supra</u>, 86 F.3d at 35, <u>citing</u> <u>United States v. Rosa</u>, <u>supra</u>, 11 F.3d at 337. A "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson v. Virginia</u>, <u>supra</u>, 443 U.S. at 326. Finally, a petitioner's conviction will stand unless the record is "so totally devoid of evidentiary support that a due process issue is raised." <u>Bossett v. Walker</u>, 41 F.3d 825, 830 (2d Cir. 1994).

A federal court reviewing a habeas corpus petition from a state prisoner based on a claim of insufficiency of the evi-

dence must look to state law to determine the elements of the offense in issue.  See Jackson v. Virginia, surpa, 443 U.S. at 324 n.16; Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). Under New York law, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses a narcotic drug with intent to sell it." N.Y. Penal Law § 220.16(1).  Petitioner does not dispute that the police recovered from his possession several bags containing cocaine.[1]  Thus, the only issue is whether the evidence suffi- ciently proved that petitioner possessed those drugs with the "intent to sell."  Petitioner challenges the sufficiency of the evidence with respect to his intent, arguing that (1) the offi- cers' testimony concerning their observations of petitioner's participation in a drug transaction was overly "ambiguous;" (2) no buyer or "money man" was apprehended; and (3) the amount of drugs recovered from petitioner was consistent with personal use (Am. Pet. at 5).

"'Because direct proof of an individual's intent . . . is typically lacking, this [intent] element is generally estab-

---

[1]Petitioner also does not challenge the prosecution's evidence concerning the weight of those drugs nor does he deny that he knowingly possessed those drugs.  Thus, despite some ambiguity in the language of the amended petition, it does not appear that petitioner is challenging the sufficiency of the evidence concerning his conviction for criminal possession of a controlled substance in the fourth degree.  See N.Y. Penal Law § 220.09(1).

17

lished circumstantially by evidence of the person's conduct and/or statements.'" Wilson v. Senkowski, 02 Civ. 0231 (HB)(AJP), 2003 WL 21031975 at *10  (S.D.N.Y. May 7, 2003), quoting Matter of Anthony L., 226 A.D.2d 101, 101-02, 640 N.Y.S.2d 70, 71 (1st Dep't 1996)(brackets in original); see also Hernandez v. Conway,  485 F. Supp.2d 266, 282 (W.D.N.Y. 2007).

At petitioner's trial, Vanorden testified that he observed petitioner and his un-apprehended partner engage in suspicious behavior in an area known for having a high rate of narcotics sales -- behavior which apparently culminated in a transaction in which a third individual, a suspected buyer, approached petitioner and his partner and handed petitioner's partner money in exchange for an object from petitioner's pocket (Tr. at 11-19).  Holland also testified to observing petitioner hand the un-apprehended buyer an object from his pocket (Tr. at 79-84).  When Holland subsequently searched petitioner's pockets, he recovered seven bags containing what appeared to be crack-cocaine, another bag containing an eighth of an ounce of white powder and several empty bags identical to the bags in which the crack was packaged (Tr. at 89-90, 101, 143).  A police chemist testified that the substances in those bags contained cocaine (Tr. at 143).  Furthermore, Vanorden and Holland testified to being experienced narcotics officers.  Vanorden testified that at the time of petitioner's arrest he had been with the New York

Police Department for approximately eight years and had partici-
pated in about 150 narcotics arrests (Tr. at 2-8). Holland
testified that he had been with the police department for five
years and participated in about 250 narcotics arrests (Tr. at 73-
74).

Petitioner first claims that Vanorden and Holland's
testimony concerning his conduct was too ambiguous to support an
inference that he was engaged in a narcotics transaction. In
support of this argument, petitioner points out that neither
officer testified to any facts that would establish that peti-
tioner was acquainted with his alleged partner, and neither
officer could describe the "object" that petitioner handed to the
alleged buyer. According to petitioner, the officers' belief
that a sale had occurred was merely a hunch that was never
confirmed by the apprehension and search of his alleged partner
or the alleged buyer (App. Brief at 8-10).

The trial record reflects that the defense placed these
and other weaknesses in the prosecution's case before the jury
through counsel's cross examinations of Vanorden and Holland and
in her summation (Tr. at 30-72, 113-135, 153-170). Thus, the
jury had an opportunity to weigh that evidence before reaching
its verdicts in favor of the prosecution. This Court must defer
to that jury's assessment of the evidence. See Maldonado v.
Scully, supra, 86 F.3d at 35.

Furthermore, the fact that the officers could not describe the object that they saw petitioner hand to the suspected buyer does not preclude the officers' observations from supporting an inference that petitioner was handing narcotics to the suspected buyer as part of a sale. Sosa v. Mohawk Corr. Facility, 07 Civ. 5916 (NRB), 2008 WL 534764 at *4 (S.D.N.Y. Feb. 25, 2008) (Detective's testimony that she observed the petitioner handing small objects to a buyer coupled with petitioner's possession of a large number of bags containing cocaine constitutes sufficient evidence of an intent to sell.); People v. Schlaich, 218 A.D.2d 398, 400, 640 N.Y.S.2d 885, 888 (1996) (Officers had probable cause to arrest defendant despite the officers' inability to describe the objects defendant had handed the suspected buyers because "the hand-to-hand exchange of small packages for money in a drug-prone neighborhood is [unlikely] innocuous behavior susceptible to innocent interpretation.")

Moreover, petitioner's argument that the amount and packaging of the narcotics found in his pockets are consistent with petitioner's status as a mere drug user who had recently made a purchase, (App. Brief at 10), is belied by petitioner's possession of narcotics packaging materials, which further evidenced his intent to sell. See People v. Johnson, 261 A.D.2d 833, 834, 689 N.Y.S.2d 569, 570 (4th Dep't 1999) ("The jury reasonably could have inferred defendant's intent to sell from

the presence of a razor and glassine baggies, some empty and some containing crack cocaine . . .").

Viewing the evidence in the light most favorable to the prosecution, I conclude that a rational trier of fact could have found beyond a reasonable doubt that petitioner possessed narcotics with the intent to sell.  See Sosa v. Mohawk Corr. Facility, supra, 2008 WL 534764 at *4.

Because there is sufficient evidence in petitioner's trial record to allow a rational trier of fact to find beyond a reasonable doubt each element of the crime of criminal possession of a controlled substance in the third degree, the Appellate Division's decision was not contrary to nor an unreasonable application of clearly established Supreme Court precedent.

B.  Petitioner's Fourth
    Amendment Claim Does
    Not Provide a Basis
    for Relief Pursuant
    to Stone v. Powell

Petitioner next claims that Holland's search of him was illegally premised on incredible facts, namely that Holland and Vanorden could not possibly have observed the alleged drug transaction involving petitioner under the circumstances they had described in their testimony.

The limited scope of review available in habeas proceedings for alleged Fourth Amendment violations was explained by

the Honorable Richard M. Berman, United States District Judge, in Baker v. Bennett, 235 F. Supp.2d 298, 306-07 (S.D.N.Y. 2002):

> In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court established that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494, 96 S.Ct. 3037; Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). A federal court "ha[s] no authority to review the state record and grant the writ simply because [it] disagree[s] with the result reached by the state courts" on a Fourth Amendment issue. Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977); see also Torres v. Irvin, 33 F. Supp.2d 257, 264 (S.D.N.Y. 1998) ("A petition for a writ of habeas corpus must be dismissed where it seeks simply to relitigate a Fourth Amendment claim."). The only way a federal court can review such a claim is where "the state has provided no corrective procedures at all," or the state has provided a corrective mechanism, but the defendant is precluded from using that mechanism "because of an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70 (citing Gates, 568 F.2d at 839); Torres, 33 F. Supp.2d at 264.

See also Wallace v. Kato, 127 S.Ct. 1091, 1099 n.5 (2007); Stokes v. Powers, 04 Civ. 758 (NAM), 2008 WL 1991081 at *13-14 (N.D.N.Y. May 5, 2008); Rosario v. Burge, 07 Civ. 5907(VM), 2008 WL 918578 at *7 (S.D.N.Y. Mar. 27, 2008); Bridgefourth v. Artus, 05-CV-535 (VEB), 2007 WL 4373524 at *3 (W.D.N.Y. Dec. 10, 2007); Armsworth v. Graham, 07 CV 3727 (JG), 2007 WL 4224643 at *4 (E.D.N.Y. Nov. 27, 2007); Myers v. Laclair, 06 Civ. 13321 (NRB), 2007 WL 3254902 at *7 (S.D.N.Y. Oct. 31, 2007); Steinbergin v. Barkley, 05 Civ. 6565 (JSR)(MHD), 2007 WL 1987953 at *4 (S.D.N.Y. July 9, 2007);

Hall v. Griener, 00 Civ. 5517 (WHP)(HBP), 2004 WL 350759 at *2-*3
(S.D.N.Y. Feb. 24, 2004); Briggs v. Phillips, 02 Civ. 9340
(SAS)(AJP), 2003 WL 21497514 at *5 (S.D.N.Y. June 30, 2003);
Skinner v. Duncan, 01 Civ. 6656 (DAB)(AJP), 2003 WL 21386032 at
*14 (S.D.N.Y. June 17, 2003); Valtin v. Hollins, 248 F. Supp.2d
311, 317 (S.D.N.Y. 2003); Edwards v. Fischer, 01 Civ. 9397
(LAK)(THK), 2002 WL 31833237 at *2 (S.D.N.Y. Dec. 16, 2002);
Torres v. Irvin, 33 F. Supp.2d 257, 264 (S.D.N.Y. 1998).

       The Court of Appeals for the Second Circuit has held
that New York's procedure for reviewing Fourth Amendment claims
is adequate.  See Capellan v. Riley, 975 F.2d 67, 70 n.1 (2d Cir.
1992).  See also Benton v. Brown, 537 F. Supp.2d 584, 591
(S.D.N.Y. 2008); Armsworth v. Graham, supra, 2007 WL 4224643 at
*4; Crispino v. Allard, 378 F. Supp.2d 393, 413 (S.D.N.Y. 2005);
Castillo v. Miller, 04 Civ. 6157 (GEL), 2005 WL 1036346 at *5-*6
(S.D.N.Y. May 4, 2005); Edwards v. Fischer, supra, 2002 WL
31833237 at *2; Manning v. Strack, CV 99-3874 (RR), 2002 WL
31780175 at *4 (E.D.N.Y. Oct. 11, 2002); Crawford v. Artuz, 165
F. Supp.2d 627, 637 (S.D.N.Y. 2001).  Petitioner litigated his
Fourth Amendment claim at a pre-trial hearing held on October 31,
2002 during which Vandoren testified, and the Trial Court heard
counsel's arguments concerning a motion to suppress.  In addi-
tion, petitioner was afforded the opportunity to litigate the
claim again on direct appeal to the Appellate Division.  Thus,

petitioner cannot claim that "the state has provided no correc-
tive procedures at all." See Capellan v. Riley, supra, 975 F.2d
at 70.

Since petitioner cannot satisfy the first prong of
Capellan, his Fourth Amendment claim can succeed only if he can
show that there was "an unconscionable breakdown in the underly-
ing process." Capellan v. Riley, supra, 975 F.2d at 70, citing
Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc).
"An unconscionable breakdown occurs when the state court fails to
conduct a reasoned inquiry into the petitioner's claim." Valtin
v. Hollins, supra, 248 F. Supp.2d at 317, citing Papile v.
Hernandez, 697 F. Supp. 626, 633 (E.D.N.Y. 1988). See also Vega
v. Artuz, 97 Civ. 3775 (LTS)(JCF), 2002 WL 252764 at *12
(S.D.N.Y. Feb. 20, 2002) (stating "some sort of 'disruption or
obstruction of a state proceeding' is typical of [an unconsciona-
ble breakdown]"), quoting Capellan v. Riley, supra, 975 F.2d at
70.

Although petitioner disagrees with the result reached
by New York's courts, petitioner does not contend that the state
failed to provide meaningful procedures to address his Fourth
Amendment claim. The Trial Court conducted a pre-trial hearing,
where petitioner's trial counsel cross-examined Vandoren concern-
ing the circumstances under which he observed what he believed to
be a drug transaction. The Trial Court then issued an oral

decision setting forth its findings of fact and conclusions of law (Hr. at 59-61). Petitioner litigated his Fourth Amendment claim again on direct appeal in his pro se supplemental brief, and the Appellate Division considered and rejected that claim. People v. Pena, supra, 2 A.D.3d at 249, 768 N.Y.S.2d at 324. Given this record, it is clear that petitioner was afforded a "reasoned inquiry" concerning his Fourth Amendment claim. Daniel v. Conway, 498 F. Supp.2d 673, 680 (S.D.N.Y. 2007) (Habeas relief on the basis of an illegal search was foreclosed where petitioner "[did] not claim that the state failed to provide appropriate corrective procedures, and [petitioner] availed himself of those very procedures by appealing his conviction [on that ground] to the Appellate Division and the state Court of Appeals."); Valtin v. Hollins, supra, 248 F. Supp.2d at 317 (Hearing transcript reflecting habeas petitioner had cross-examined officers concerning the circumstances surrounding his arrest and hearing judge's oral opinion "reflect[ed] a 'reasoned inquiry' into [petitioner's] claims" and not an unconscionable breakdown in state procedure.). Furthermore, it is of no moment that the Appellate Division's decision did not explain its rationale for affirming the Trial Court's denial of petitioner's suppression motion. See Capellan v. Riley, supra, 975 F.2d at 72 (declining to infer that the Appellate Division's summary affirmance of petitioner's Fourth Amendment claim indicated an "unconscionable

breakdown," as doing so would reflect doubt on the ability of state courts to adjudicate federal claims and federal courts do not have the authority to tell state courts how to write their opinions) (internal citations omitted).

Petitioner's disagreement with the result reached by New York's courts, even if justified, does not support the conclusion that there was an "unconscionable breakdown" and does not permit petitioner's Fourth Amendment claim to be re-litigated. See Capellan v. Riley, supra, 975 F.2d at 71 ("Even if [petitioner] were correct in his allegation that the Appellate Division erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result."); accord Gates v. Henderson, supra, 568 F.2d at 840.

Accordingly, since petitioner was afforded the opportunity to litigate his Fourth Amendment claim at the suppression hearing and on appeal, and can point to no "unconscionable breakdown" in the system, his Fourth Amendment claim cannot be re-litigated here. See Baker v. Bennett, 235 F. Supp.2d 298, 307 (S.D.N.Y. 2002).

IV. Conclusion

For the foregoing reasons, I respectfully recommend that the petition be denied in its entirety.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005)(<u>per</u> <u>curiam</u>)(internal quotation marks omitted); <u>see</u> <u>also</u> <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir. 2005)(<u>per</u> <u>curiam</u>). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

## V.    <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District

Judge, 500 Pearl Street, Room 2510, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         June 2, 2008

                              Respectfully submitted,

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Jose Pena
DIN 02-R-6289
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

Lisa Fleischmann, Esq.
Luke Martland, Esq.
Assistant Attorneys General
State of New York
120 Broadway
New York, New York 10271

                              28